# Huntingdon and Broad Top Mountain Railroad and Coal Company *versus* Decker.

1. The declarations of an agent made at the time of the particular transaction, while acting within the scope of his duties, may be given in evidence against his principal; otherwise, if made after the transaction is fully completed and ended.

2. The declarations of officers of a corporation rest upon the same principles as apply to other agents.

3. Where a railroad company knowingly employs a conductor who is unfit for his position, it is responsible for his negligence to a fellow-servant, and knowledge in a superintendent who possesses general powers of management is knowledge in the company.

4. Where evidence tending to prejudice or affect the jury, and to impair the effect of the evidence of a material witness in regard to other facts (properly in evidence) has been improperly admitted, its withdrawal by the court after argument upon it to the jury by counsel, does not cure the fault of its admission.

5. In an action for damages arising from an accident caused by the negligence of a railroad company's servant, the court below admitted as evidence of the company's knowledge of this servant's unfitness, a statement of their superintendent made on the day after the accident: *Held*, to be error.

May 16th 1876.    Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson, and Woodward, JJ.    Williams, J., absent.

Error to the Common Pleas of *Huntingdon county*: Of May Term 1876, No. 1.

Case by Mary Decker against the Huntingdon and Broad Top Mountain Railroad and Coal Company, to recover damages for herself and her two minor children for the death of her husband, Adolphus Decker, who was killed in a collision upon the defendant's railroad.

Decker was engineer on the locomotive of a freight train on the defendant's road, and was killed on November 21st 1872, by a collision between his train and another train on the same road. At the time of his death he was running upon what was called the Cumberland coal train No. 2, from Huntingdon to Mt. Dallas. That train left Huntingdon on the morning of the day of his death, and when the collision took place was running on its schedule time, and in all respects according to orders.  On the day of the accident, the "local freight" train (running from Mt. Dallas north) with which the collision occurred, was behind time, and in such case it became the duty of the conductor of that train, Jacob Bowser, to keep out of the way of other trains.  Bowser was well aware of this rule, and was besides notified, before leaving Mt. Dallas, by a telegraphic order from the superintendent of the company, that the Cumberland coal train No. 2 would be on the road for that day.    This order was as follows:—

. "Telegraphic Train Order
No. 2 Coal Train will be represented.   Run accordingly.
                                          J. McK.
"Correct.   J. McK."

Bowser was also killed in the accident, and this order was found in his pocket after his death.

It appeared, from the testimony of the engineer of Bowser's train, that when this order was handed to Bowser he mis-read it, as if it had been : "Coal Train No. 2 will *not* be represented," &c. Then, instead of awaiting Coal Train No. 2 at Piper's run, he pushed on to Riddlesburg and, solely in consequence of this mistake or disobedience of orders, the collision in which Decker was killed occurred between Piper's run and Riddlesburg.

At the trial, the plaintiff offered to prove by John Chappell that, on the day of the accident, a few hours after it occurred, he met Mr. McKillips, the superintendent of the defendant company, who said Bowser had gone against his orders ; that witness replied that this was not the first time Bowser had done this, and then McKillips said, "Don't you know that I have discharged him three or four times for getting drunk and disobeying orders? But he would promise to obey orders, and I would employ him again," for the purpose of showing negligence on the part of defendant in retaining in their employ a man whose intemperate habits were known to the superintendent.

The defendant objected to proving conversations with superintendent McKillips, he being a competent witness, and such proof being inadmissible to contradict him, if he should deny the matter alleged.

The evidence was admitted and bill for defendant sealed.

The admission of evidence under this offer was the subject of the first assignment of error.

The evidence given by the witness before this offer was made, and afterwards, in pursuance of it, showed that the conversation between the witness and the superintendent took place on the day after the accident. There was some contention in this court as to whether the offer was of a conversation which took place on the day *of*, or the day *after*, the accident. This court took the latter view of it.

The plaintiff offered to prove by the same witness that McKillips, as superintendent, had the entire control and management of the road, its hands, machinery, trains, &c. ; that he employed Bowser, the conductor of the local freight, through whose negligence, in part, it is alleged the plaintiff's husband was killed ; that Bowser was a reckless conductor, and of intemperate habits ; that he had been repeatedly discharged by McKillips for disobedience of orders and drunkenness, and employed again by him, after notice from the engineer of Bowser's train that he would leave the service of the company unless he was put on another engine or Bowser was discharged, and that McKillips promised to see what he could do, and said, "Wait a little ;" and that by the negligence of either McKillips or Bowser, or both of them, the plaintiff's husband was killed.

[Huntingdon, &c., Railroad Co. v. Decker.]

Defendant objected on the ground, (1) that previous special acts of incompetence are not matters for the jury as to general character, and for the further reason that there could be no recovery against the company for an injury done to one servant by the carelessness or mistake of another in the same service; and (2) that no blame having been shown to attach to any other person than Bowser, it is only his general character for negligence and unfitness that can be shown, and only when offered in connection with proof that the defendant had previous knowledge of such unfitness.

The evidence was admitted, and a bill for the defendant sealed. This was the subject of the second assignment of error.

The plaintiff further offered to prove by John Hughes that the railroad company, defendant, employed as their superintendent, John McKillips, a man of known intemperate habits, and committed to him the general management of the road, covering the employment and discharge of all hands, the making of schedules and the running of all trains; that Bowser's train, on the day of the accident was not running on schedule, but on orders from McKillips, who was under the influence of liquor on that day, and that for years before the accident the general reputation of McKillips for fitness and competency for the position he held was bad.

This was offered to show negligence on the part of the defendant in employing an unfit superintendent; and also to show such personal negligence on the part of the superintendent on the day of the accident as contributed to the death of the plaintiff's husband. This evidence was objected to by the defendant.

This was the third error assigned.

The plaintiff also offered to prove by W. H. Fisher that on the 19th April 1870, and from that time until the 29th July 1870, he was the engineer of Bowser's train; that Bowser's character as a conductor was that of a reckless, careless man; that he (the witness) complained of him to John McLaughlin, the train master, three different times; that he afterwards complained of him to Mr. McKillips, the superintendent, and that Mr. McKillips told him that McLaughlin had spoken to him about it; and that he (the witness) left the road or left that train on account of Bowser's carelessness or recklessness; that Bowser's general reputation as a railroad man was that of one who was unfit for the position of conductor; to be followed by evidence that Bowser continued to bear that reputation up to the time of the accident at which Decker was killed. This was objected to on the ground that the time during which his character was proposed to be proven, being more than two years before the accident occurred, was too remote to be evidence. The evidence was admitted and a bill sealed; this constituted the fourth assignment of error.

A very large amount of testimony was introduced under the third offer above, on the subject of the superintendent's compe-

[Huntingdon, &c., Railroad Co. *v.* Decker.]

tency, and much time during the trial (which lasted for several days) was taken up by this question. McKillips himself was also a witness, and testified as to material points in the case.

The court (Dean, P. J.) charged the jury that the general rule is that where several persons are employed as workmen in the same general service and one of them is injured through the carelessness of another the employer is not responsible; but that if the jury believed that Bowser was incompetent and unfit for his position and was known to his employers to be so, the defendant would be responsible; and further charged :—

" As to the evidence relating to McKillips's habits rendering him unfit for his position, we withdraw that evidence entirely from your consideration. It was admitted by us in view of the fact that at an early stage of the case it was urged by plaintiff that the accident might have been caused by clashing or contradictory orders issued by McKillips. From the evidence here in the case on both sides the orders to Bowser were proper and intelligible, and you would be bound to so find from the evidence, because the evidence is undisputed, that from no direct act of McKillips did the accident occur. This being the case his character and habits have nothing whatever to do with the issue—they have no bearing on it, and you will dismiss from your minds any impression made by the testimony in this particular, with reference to McKillips's habits and unfitness. It was received in view of another theory which it was thought might be drawn from the evidence. You will determine just the question whether McKillips, prior to the accident, knew that Browser was reckless and incompetent, or drunken, to an extent which unfitted him for the position."

There was a verdict for the plaintiff and judgment thereupon. The defendant below took this writ of error. The first four assignments of error respectively were to the admission of evidence as above shown.

*S. L. Brown* (with him *J. M. Bailey* and *J. E. Gowen*), for the plaintiff in error.—The evidence as to McKillips's competency was discussed at length to the jury. It was then too late to withdraw it: Penna. Railroad Co. *v.* Butler, 7 P. F. Smith 335; Del. & Hud. Canal Co. *v.* Barnes, 7 Casey 193. There is no rule of law that an employer is bound to employ none but skilful servants: Ryan *v.* Cumberland Valley Railroad Co., 11 Harris 384; Weger *v.* Penna. Railroad Co., 5 P. F. Smith 460; Caldwell *v.* Brown, 3 Id. 456.

*R. M. Speer* (*E. S. McMurtrie* with him), for defendant in error.—As to the first assignment, the objection made admits the facts, but urges that the plaintiff below was bound to call McKillips to prove them. If the suit had been against McKillips, his admissions would have been evidence against him; but he *was* the company;

its knowledge could only be shown by showing his knowledge. His knowledge was one of the issues of the case: Frazier v. Penna. Railroad Co., 2 Wright 111. If the objection is sound, proof of his knowledge would have become impossible, had he died before the trial: Laning v. New York Central Railroad Co., 49 N. Y. 45, is directly in point. The evidence as to McKillips, having been withdrawn, could not have injured the defendant; for it touched the right to recover and not the question of damages. It did not tend to inflame the damages as in Penna. Railroad Co. v. Butler, *supra.* In Del. & Hud. Canal Co. v. Barnes, *supra*, the evidence was not withdrawn.

Mr. Justice MERCUR delivered the opinion of the court, October 9th 1876.

The first assignment of error is to the admission of the declarations of the superintendent of the company, made on the day after the accident.

It is a well-established rule that the declarations of an agent, made at the time of the particular transaction which is the subject of inquiry, and while acting within the scope of his authority, may be given in evidence against his principal, as a part of the *res gestæ.* It is equally as well settled that the declarations of an agent, made after the transaction is fully completed and ended, are not admissible: Magill v. Kauffman, 4 S. & R. 320; Hough v. Doyle, 4 Rawle 291; Clark v. Baker, 2 Whart. 340; Bank of Northern Liberties v. Davis, 6 W. & S. 285; Pennsylvania Railroad Co. v. Books, 7 P. F. Smith 339. The declarations of officers of a corporation rest upon the same principles as apply to other agents. Idem.

A question was raised whether the declarations testified to by John Chappel were not made on the day of the accident and immediately thereafter. A reference to his testimony clearly shows them to have been made on the next day. After he had testified to a conversation he had had with the superintendent on the day or evening of the accident, and before the evidence covered by this assignment was offered, the question was put to him, "Did he say anything about Bowser having disobeyed orders?" To this the witness answered, "He did not say that until the next day." Again, after the court decided the evidence admissible, the first question put to him was, "You stated you had a conversation with McKillips the day after the accident about Bowser?" To this the witness answered, "Yes," and proceeded to narrate it. The objection is not to proving the fact of the superintendent's knowledge of Bowser's improper conduct and habits, but to the mode of proof. The evidence ought not to have been received.

We see no error in admitting the evidence covered by the second and fourth assignments. It was clearly competent to prove Bow-

ser's accustomed disobedience of orders and his habitual drunkenness; that these facts were known to the superintendent, who had the entire control and management of the road, including the right to employ and to discharge conductors and hands.

Where a railroad company employs a conductor who is unfit for the business and knows his unfitness, it is chargeable with the consequences of the conductor's negligence, even to one employed in the same general service. Knowledge of the superintendent, possessing the general powers stated, is knowledge to the company: Frazier *v.* Pennsylvania Railroad Co., 2 Wright 104; Caldwell *et ux. v.* Brown *et al.*, 3 P. F. Smith 453; O'Donnell *v.* Allegheny Valley Railroad Co., 9 Id. 239; Ardesco Oil Co. *v.* Gilson, 13 Id. 146; Patterson *v.* Pittsburgh & Connellsville Railroad Co., 26 Id. 389. When a conductor is shown to be habitually intoxicated, it raises a presumption of negligence in case of accident: Pennsylvania Railroad Co. *v.* Books, *supra.*

The third assignment relates to the incompetency of the superintendent on the day of the accident. Unless some act of his contributed to the accident, it mattered not what his habits were. Hence no evidence should have been received of his general incompetency, unless it was shown that it contributed to the injury. In this case it is shown that the order of the superintendent was correct and proper. It is shown that the collision was caused by the carelessness of Bowser in not correctly reading the order, or in not obeying it. There was therefore error in receiving evidence of his incompetency. It is true, when the court charged the jury, it withdrew from their consideration the evidence tending to show him unfit for the position; but did this cure the evil? In Shaeffer *v.* Kreitzer, 6 Binn. 430; Nash *v.* Gilkeson, 5 S. & R. 352; Ingham *v.* Crary, 1 Phila. R. 388, it was held that when evidence had been improperly admitted which was calculated to affect the minds of a jury, the error was not cured by the direction of the judge that it should not be regarded. In Unangst *v.* Kreamer, 8 W. & S. 391, and in Miller *v.* Miller, 4 Barr 317, the former cases were somewhat modified; but in the Delaware & Hudson Canal Co. *v.* Barnes *et al.*, 7 Casey 193, all the cases were reviewed. The cases are there distinguished, and it is shown that in both of the latter the evidence was withdrawn from the jury immediately after it had been given. The manifest reasoning of the court was to hold that whenever the testimony received was of such a character as to inevitably tend to prejudice the minds of the jurors, the error was not cured by the court telling them, after the argument had closed, not to consider the testimony. In this case the evidence had undoubtedly produced an impression on the mind of the jury. It was calculated to impair the effect of his testimony in regard to other facts in the case. Although the court did say to them that his character and habits had nothing to do with the issue, and that they should

"dismiss from their minds any impression made by the testimony in this particular," yet in so far as it affected his general reputation as a witness it was not withdrawn, nor could its effect be entirely removed.

Under the whole evidence and charge of the court we discover no substantial error in the remaining assignments.

Judgment reversed, and a *venire facias de novo* awarded.