# ERIE & W. V. R. CO. v. AMELIA L. SMITH.

ERROR TO THE COURT OF COMMON PLEAS OF WAYNE COUNTY.

Argued February 28, 1889—Decided April 8, 1889.

1. In an action against a railroad company to recover damages for the death of an employee resulting from an accident due to the alleged negligence of the company, evidence, on the part of the plaintiff, of declarations as to defects in the engine, made by officers of the company after the accident, and not in contradiction of prior testimony of such officers, are not admissible.

2. Where evidence has been improperly received, which tends to prejudice the minds of the jury, and motions made to strike it out at or before the close of the testimony are refused, a direction to the jury in the general charge to disregard the evidence, and a withdrawal of it from their consideration, comes too late and does not cure the error of admitting it.

(*a*) The accident in this case resulted from the engine leaving the track while rounding a curve. Evidence was introduced to show the defective

construction of the track: certain witnesses, who examined the track 33 days after the accident, testified to slight variations in the degrees and lines of the curves, and others, that the ballasting of the track was defective. There was no evidence, however, that either of these defects caused the accident.

3. The evidence referred to did not establish such negligence on the part of the company as warranted a recovery against it for the death of an employee: had the person killed been a passenger, the burden would have been upon the company to rebut the presumption of negligence raised by the evidence, but an employee must affirmatively prove such negligence as violates the special and limited duty of his employer.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 184 January Term 1889, Sup. Ct.; court below, No. 119 October Term 1886, C. P.

Case by Amelia L. Smith, against the Erie & Wyoming Valley Railroad Co. to recover damages for the death of Frederick M. Smith, her husband, a fireman employed on defendant's locomotive, by reason of the alleged unsafe and improper construction of the track, the unsafe and improper kind of engine used, the unsafe and improper speed at which said engine was run, and the careless and negligent manner of constructing and operating said railroad and appurtenances. The defendant pleaded, not guilty.

At the trial, on October 11, 1888, the facts appeared as follows:

On March 19, 1886, an east-bound passenger train on the defendant's road left Georgetown station at 5:13 P. M. At 5:38, the train reached the "Tannery curve," five miles from Georgetown. After running about 675 feet on this curve, the locomotive suddenly mounted the outer rail, and after running about 229 feet on the ties, upset outside the track. Smith, who was fireman on this locomotive, was thrown under a truck and received injuries from which he died about two hours later.

The plaintiff called two civil engineers, Stevenson and Rodman, to testify as to the condition of the road-bed and curve. They testified in substance that on April 22, 1886, they found variations of from two to three degrees in the curve, but that in October following they found the road in good condition and the curves more regular; and further that the road was

ballasted with dirt instead of gravel. The evidence of these witnesses is referred to at length in the opinion of the Supreme Court.

Evidence objected to.

By the court: Objections overruled; exceptions.[1][2][3]

At the conclusion of this evidence counsel for defendant made the following motion:

We now move to strike out from the evidence the testimony of the plaintiff's witnesses, Stevenson and Rodman, as to the alleged irregularity of the curve at the place where the accident happened; on the ground that the curve is not an element in the case, where nothing is involved except the safety of an employee, and that the railroad company is not restricted by law to any particular curve, or regularity or irregularity in the curves. Also to strike out the testimony of the same witnesses as to the condition of the road-bed at the time they testified to having made their first examination April 22, 1886; on the ground that that was too remote a period to justify any inference as to the condition of the track nearly five weeks earlier, and on the further ground that that offer was made with an offer to follow by testimony that the same condition existed in the track at or about the time of the accident, which offer has not been followed up according to its terms.

By the court: Motion overruled; exception.[16]

Plaintiff called two locomotive engineers, Caskey and Hayes, both of whom had run Wootton engines, similar to the one with which the accident happened, and asked them whether in their judgment such an engine would be safe to run on a road such as the defendant's was described to be, and whether they had noticed any top-heaviness as to such engines in running around curves.

Objected to.

By the court: Objections overruled; exceptions.[11][12]

At the close of this testimony, defendant's counsel made the following motion:

We now move to strike out the testimony of the witnesses Caskey and Hayes as to their judgment with regard to the safety of this Wootton engine; on the ground that it was not shown that they had had sufficient experience with this engine to enable them to form a judgment which should overbalance

the weight of the testimony as to the actual results of long use of those engines, and on the further ground that testimony of that kind is not competent evidence by which to establish the character of an engine as to safety, especially in the face of positive evidence to the contrary, from actual use.

By the court: Motion overruled; exception.[16]

Plaintiff called Biesecker, Vaughan, and Allen, to prove declarations made by Warg, superintendent of motive power, and by Hopkins and Smith, engineers on defendant's road, as to alleged defects in the engine; which declarations were made after the date of the accident.

Objected to.

By the court: Objections overruled; exceptions.[13] [14] [15]

The defendant asked the court to charge as follows:

9. In determining the question of the safety of the track, at the curve where the accident took place, at the time of the accident, the jury are not to regard the testimony of the plaintiff's witnesses, Stevenson and Rodman, as to the condition of the track, the alignment, and the road-bed, on April 22, 1886, or in October following.

Answer: We said to you that it was a matter of no consequence what the condition of the track was on April 22, 1886, 33 days after this accident. We are not concerned in the condition of the track at that time. But the evidence of Mr. Rodman and Mr. Stevenson as to what they found at that time, goes to you in connection with all the other circumstances of the case that we have mentioned, to enable you to inquire whether on March 19, 1886, there was such a defect in this road-bed as would require you to say, or justify you in saying, that the defendant was guilty of negligence in permitting it. We cannot affirm this point, and withdraw this evidence from your consideration.[4]

3. There is no evidence to be submitted to the jury of negligence on the part of the defendant in the construction, or in the maintenance of its road, nor of any defect in it at the time and place of the accident, whereby it was made unsafe for the running of the engine on which the plaintiff's husband was killed, in the manner in which it was run.

Answer: We have submitted this question to you. We

refuse the point. We cannot say that there was no evidence upon this point, and we felt it necessary to leave that question to you, with the instructions which we have given to you. We have endeavored fully and fairly to instruct you upon this point.[5]

8. As there is no evidence that the defendant failed to furnish a safe track, and a safe and suitable locomotive, and other appliances, and competent employees, the plaintiff is not entitled to recover, and the verdict must be for the defendant.

Answer: The only evidence that the track was not a safe and suitable track for the locomotives, is that of Mr. Rodman and Mr. Stevenson, and we have called your attention to that, in connection with the other evidence. While it is true that so far as this evidence shows, the defendant had employed competent employees, and a suitable locomotive and other appliances, yet, for the reasons mentioned, we cannot affirm this point.[6]

7. Therefore, upon all the evidence relating to the plaintiff's allegations of negligence on the part of the defendant, the verdict must be for the defendant.

Answer: This asks us to take the case away from you, and as we have already said, we decline to do so.[9]

The court in the general charge, referring to the declarations of Warg, Hopkins and Smith, instructed the jury as follows:

"We think, therefore, that so far as the construction of that engine is concerned, we will not submit to you, nor permit you to find that the defendant was guilty of negligence in using a Wootton boiler engine upon this train. We do not think the evidence would justify you in finding them guilty of negligence in that matter, and for that reason we relieve you from any difficulty with reference to that question."

As to the testimony in regard to the condition of the curve and ballasting of the road-bed, the court instructed the jury that even if they found the defendant negligent in this respect, they must disregard the evidence relating thereto unless they found also that such negligence contributed to the accident.

The verdict was for the plaintiff for $5,000, and judgment was entered thereon. Thereupon the defendant took this writ, assigning as error, inter alia:

1–3. The admission of plaintiff's offers.[1 to 3]

4–9. The answers to defendant's points.[4 to 9]

11, 12. The admission of plaintiff's offers.[11 to 12]

13–15. The admission of plaintiff's offers.[13 to 15]

16. The refusal of defendant's motions to strike out evidence.[16]

*Mr. H. Wilson* and *Mr. J. A. Buchanan* (with them *Mr. W. H. Dimmick*), for the plaintiff in error.

*Mr. John Houston Merrill* (with him *Mr. A. T. Searle* and *Mr. M. M. Treadwell*), for the defendant in error.

OPINION, MR. JUSTICE GREEN:

In no possible point of view were the declarations which were admitted in evidence under the 13th, 14th, and 15th assignments of error competent. The testimony of Vaughan as to what Hopkins had told him was not admissible as a contradiction of anything as to which Hopkins had been asked; and as declarations by agents while in the course of their duty, all the declarations of the three persons, Warg, Hopkins, and Smith, were incompetent, because they were not part of the res gestæ. The rule of law upon this subject is so perfectly familiar that it is not necessary to refer to the authorities. These three assignments are, therefore, sustained.

The assignments from number 11 to 15, both inclusive, relate to the admissibility of evidence in regard to the condition of the locomotive. It was all received on the trial, but in the charge the learned court below withdrew it all from the consideration of the jury as being entirely insufficient to convict the defendant of any negligence in relation to the engine. After the testimony was closed and before counsel addressed the jury, a motion was made to strike out this testimony, but was refused by the court, under exception.

It has long been held, and in many cases, that where evidence has been improperly received which tends to prejudice the minds of the jurors, and the court in the charge directs the jury to disregard the evidence and withdraws it from their consideration, this instruction comes too late and does not cure the error of admitting it: Del. & Hud. Canal Co. v. Barnes,

31 Pa. 193; Penn. R. Co. v. Butler, 57 Pa. 335; Huntingdon, etc. R. Co. v. Decker, 82 Pa. 119. In the last case MERCUR, J., said, referring to D. & H. Canal Co. v. Barnes, "The manifest reasoning of the court was to hold, that whenever the testimony received was of such a character as to inevitably tend to prejudice the minds of the jurors, the error was not cured by the court telling them after the argument had closed not to consider the testimony." And in Penn. R. Co. v. Butler, SHARSWOOD, J., said, "It is in entire accordance with the opinion in that case to hold, as we do here, that if improper evidence is given tending to inflame the damages, and it is not struck out at or before the close of the testimony, so that counsel shall not be allowed to refer to or dwell upon it in their address to the jury, it is altogether too late to cure the mistake by directing the jury to disregard it in the charge."

These several assignments are therefore sustained, and also that part of the 16th assignment which relates to the testimony of Caskey and Hayes.

The remaining portion of the sixteenth assignment relates to the refusal of the court below to strike out the testimony of the plaintiff's witnesses Stevenson and Rodman, who gave evidence in regard to the curve in the track and the condition of the road-bed. The court was of opinion that this portion of the testimony might be considered by the jury. In an exceedingly fair and clear manner the judge explained to the jury just how far they might consider the testimony on this subject and in what event they might find for the plaintiff. He said the railroad company is not responsible to its employees for the manner in which the engineer lays out the curves upon the road; the jury could not be permitted to review the skill and judgment of the engineer in such a matter, but he said they might review the manner in which the rails were laid. After much careful reference to the testimony of the two witnesses, and they were all who testified on this subject, in regard to an alleged irregularity in the line of the curve as the rails were laid, he said, "If you find that the irregularity existed, and that it existed prior to this accident, then the question is whether such an irregularity was the occasion of danger such as to make this company guilty of negligence." The evidence in question was limited to that of these two wit-

nesses. The substance of their testimony was that on the 22d of April, which was thirty-three days after the accident, they went to the place of the accident and examined the track and took various measurements to show the degree of the curve, and any variations from uniformity or regularity that might exist. They said they found it to be a 9 degree curve, which varied to as low as 7 degrees 20 minutes in one place, to 10 degrees 20 minutes at the place of the accident; that this variation would make a slight difference in the line of the curve which would not be sufficient, however, to be visible to the naked eye, and that it would require a variation of three or four degrees to make it visible.

The witness Stevenson said that there was more or less variation in the curves on all railroads, but that there was more in this instance than he had seen on other roads. The witness Rodman gave no measurements, and in fact said nothing about any variations. He was examined as to other matters. There was no other testimony for the plaintiff in regard to this matter. These witnesses were not on the track on the day of the accident nor until the time of their measurements on April 22d. Of course the testimony would have but little value as to the condition of the road on the 19th of March. They went back in October, 1887, and said they then found the road in good condition, the curves more regular and with little variation. The defendant's road-master testified that nothing had been done to the track from the time of the accident to the time of the trial, and no witness testified to having done any work on the rails or seen any done in that time. The learned court submitted the evidence as to the variations in the curve to the jury with instructions that they might find negligence on the part of the defendant sufficient to enable the plaintiff to recover.

If any testimony had been given to the effect that the condition of the rails as described by Stevenson and Rodman was the cause or might be the cause of the engine mounting on the rail, or if they had described how such a result might, or could, or probably would have resulted from such a condition of the rails, there would be something from which a jury might be able to draw an inference of negligence in that respect, but there is not a particle of such evidence in the case. Neither of these witnesses nor any other, testified that the slight variation

from a regular curve in the line, so slight that it could not be seen, as described by Stevenson and Rodman, could or probably would cause the wheels of the engine to mount the rail. On the contrary the evidence was positive, not at all contradicted, that this was the only instance in which such an accident had happened; that this same engine, and other engines were constantly running over this curve for many months before and after, and on the day of the accident, and not one ever mounted the rail. Hence it was only possible to conjecture that the mounting of the rail might have been caused by the variation from the line of a regular curve in the rails, but it would be at best but a conjecture without any evidence to sustain it and opposed to all the probabilities of the case as illustrated by the whole experience of the road. Had the fireman been a passenger he would have had the benefit of a presumption of negligence which it would have been the duty of the company to rebut. But with an employee there is no such presumption and he must prove affirmatively the fact of negligence, and that it is such a kind of negligence as violates the special and limited duty of an employer to an employee. The case is simply and utterly destitute of that kind of evidence, and we cannot sanction the result that was reached without a palpable disregard of all the well considered decisions of our own and other courts which so carefully prescribe the conditions of liability of an employer to an employee on the ground of negligence.

There was some little testimony in regard to the ballasting of the track, but it proved nothing whatever as to the cause of the accident. It did not show that there was or could be from that source any depression of the track at the place of the accident. The engineer, O'Hara, who was running the engine at the time, said that after they had gone about a hundred or a hundred and fifty feet on the curve the engine "seemed to sag over just as though she struck a soft spot in the track;" that "she came back again, that is, she recovered from the sag, and it did not seem to be over the length of a rail before she struck another such place and she never recovered entirely from that. She seemed to go over and come part way back and then tipped right over." He adds, "I don't know what caused her to roll in that way, whether it was a soft spot in the track or whether she left the track. . . . . Whether she was on the track or off

from the track, I couldn't tell." This is a description of the fact of the accident and the manner of its occurrence, but it altogether fails to show the cause of it. As a matter of fact the ground was frozen and no soft spot was discovered, but even if there had been, there could have been no recovery on that ground by an employee without much further testimony. The cause of this accident was entirely unexplained and it therefore can only be regarded, in an action by an employee, as one of the ordinary risks of the business for which there is no liability. The defendant's 3d, 8th and 9th points should have been affirmed and the case withdrawn from the jury. These views sustain the 4th, 5th, 6th and 9th assignments, and also that part of the sixteenth which relates to the testimony of Stevenson and Rodman. It is not necessary to consider the remaining assignments.

Judgment reversed.