# Rosenstiel *v.* Pittsburg Railways Company, Appellant.

*Negligence—Street railways—Incompetency of motorman—Notice—Dispatcher.*

1. In an action against a street railway company to recover damages for death, where the principal issue concerns the alleged incompetency of a motorman and notice of that fact to the company, the case is for the jury where the plaintiff produces proof of the motorman's general reputation for incompetency, although the alleged incompetency arose after his lawful employment, and although the evidence did not tend to prove a bad reputation for the precise kind of negligence which caused the injury in question.

2. Incompetency of a fellow employee must be established by evidence of general reputation and cannot be proved by specific acts.

3. It is not necessary to prove that the person whose incompetency is at issue had a bad general reputation for the precise character of negligence which caused the injury. Proof of habitual recklessness and carelessness in the work he is employed to do is sufficient.

4. In a damage suit against a street railway company where the principal issue is the incompetency of the motorman and knowledge thereof on the part of the company, the action of the court in submitting to the jury, as evidence from which the fact of notice might be found, the narration of a statement concerning the incompetency of the motorman made by the witness to a "dispatcher" of the company on the occasion of a car running off the track, constitutes reversible error, if there is no evidence that the dispatcher had authority to employ or discharge.

*Evidence—Error in admission—Instruction to disregard.*

5. Where evidence which tends to prejudice the minds of the jurors has been improperly received, the error is not cured by an instruction to disregard, and the action of the court in not only failing to withdraw such objectionable testimony, but in submitting it to the jury and telling them to consider it in determining the issues, constitutes reversible

error. Such evidence should be withdrawn for every purpose and stricken from the record before counsel make their addresses to the jury.

Argued Oct. 31, 1910. Appeal, No. 154, Oct. T., 1910, by defendant, from judgment of C. P. No. 3, Allegheny Co., August T., 1906, No. 721, on verdict for plaintiff in case of Ida B. Rosenstiel v. Pittsburg Railways Company. Before BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband. Before EVANS, J.

The facts appear in the opinion of the Supreme Court.

The trial judge, in the course of his charge, instructed: "The employer is never liable to the employee for an injury occasioned through the negligence of a fellow employee unless the employer was negligent in keeping an incompetent man in its employ. So that it becomes important, if you come to that question, to determine whether Staley was a competent or an incompetent man. The only evidence here as to his competency would go not to the knowledge of the duties of his employment, but to his reckless manner of performing those duties. Was he such a reckless man? is the first question. Was he such a reckless man as to render him unfit to be placed in the position in which he was placed, in charge of the motive power of his car? . . . . The test is: Was he reasonably competent? Under the circumstances, did his recklessness go beyond the average carelessness of men in his employment? The evidence on the part of the plaintiff on that subject is evidence of reputation. You can see probably the difficulties that present themselves to both sides on a question of this kind when you have in consideration the question of a man's character for any purpose, and require that character to be proven from the witness stand. As I have stated, it is not the fact that he may have been negligent at one time, or twice; it is not a question of whether he has accidents

happen to the car which he was operating; because then the question arises as to whether such accidents were due to his negligence or whether they were not. And so it is not absolutely determined by the question as to what a man's reputation is; because a man may have a reputation which he does not deserve. [The question for your determination is: Was he so reckless in the discharge of his duties as to render him unfit to be kept in that position? Not, did he have such a reputation? That is not the first question here. But, has the evidence of reputation satisfied you, or can you find from the evidence of reputation, that he was in fact unfit for this position by reason of his negligent habit?] [12] If you find that in the negative, that is, if you find that the evidence does not justify your finding that he was of such negligent habits as to render him unfit to be placed in this position, then your verdict should be for the defendant. If, however, you find that he was unfit to be placed in the position as a motorman in charge of a car, then the next question for your consideration is: Was the fact that he was incompetent known to this company? Or, was his incompetency such—did it so manifest itself, that the company should have known it had they exercised the ordinary care which an employer is bound to exercise in the supervision of its employees? We have evidence on the part of the plaintiff of his reputation which also goes to the question as to whether his character was known to his employers or should have been known. We have evidence of one witness, I believe, that complaint had been made to the division superintendent, or possibly not a complaint, but that a statement of this man's character had been made to a division superintendent and that statements of the fact had been made to dispatchers. [There is no evidence that any statement was made to any person who had the power to discharge Staley; but there is evidence that reports of this kind, under the rules of the company, should be made to the division superintendent. Now, in passing upon this

question, if you come to that, as to whether or not Staley's character for care was known or should have been known to his employer, you consider evidence of his reputation and the evidence of the information given to the different persons in the employ of the defendant company.] [13] If you find that he was incompetent, but that that fact was not known to his employer and by the exercise of reasonable care could not have been known to his employer, then your verdict should be for the defendant. But if you find . . . . that Staley was incompetent and that his incompetency was known to his employer, then your verdict should be for the plaintiff."

Verdict and judgment for plaintiff for $6,000. Defendant appealed.

*Errors assigned* were (1) refusal of binding instructions for defendant; (2) refusal of defendant's motion for judgment in its favor n. o. v. (12, 13) portions of charge as above quoting them; (3–11, 14) various rulings on evidence sufficiently appearing in the opinion of the Supreme Court.

*William A. Challener*, with him *Clarence Burleigh*, for appellant.—Under our authorities proof of reputation is good evidence only when it relates to the character of the person prior to the employment and that such evidence is not admissible when the alleged incompetency of the employee arises after his lawful employment; as to the latter, proof of actual incompetency must be made: Stasch v. Cornwall Ore Bank Co., 19 Pa. Superior Ct. 113; Frazier v. Penna. R. R. Co., 38 Pa. 104; Snodgrass v. Carnegie Steel Co., 173 Pa. 228.

There was no notice given to the defendant: Reiser v. Penna. Co., 152 Pa. 38; Gier v. Los Angeles Consolidated Electric Ry. Co., 108 Cal. 129; Haskin v. N. Y. Cent., etc., R. R. Co., 65 Barbour, 129; Hatt v. Nay, 144 Mass. 186.

*Ralph P. Tannehill*, for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, January 3, 1911:

Crawford B. Rosentiel, a lineman in the employ of the defendant company, was killed on November 10, 1905, while engaged at work on the repair of an overhead trolley wire. His death was due to the act of Joseph Staley, a motorman in the employ of the same company, who ran his car into the ladder upon which Rosentiel was standing. The plaintiff, the decedent's widow, recovered a verdict, and the defendant has appealed. The statement of claim avers the facts as we have given them, with certain details surrounding the accident, that Staley was a reckless, careless, and incompetent employee, and that this was known, or should have been known to the defendant had it made a reasonable and proper investigation. The issues on the negligence of Staley and the contributory negligence of the decedent were properly submitted to the jury, and the only questions raised by the assignments of error go to the issues concerning the alleged incompetency of Staley and notice of that fact to the defendant. In this relation, the appellant attacks certain rulings on the evidence and the charge of the trial judge, contending that the evidence was incompetent and insufficient; that it should not have been submitted to the jury, and that the court should have given binding instructions for the defendant.

Without quoting in extenso from the testimony, there was evidence to show that Staley had been employed by the defendant from 1902 until the time of the accident; that during this period his reputation for care, skill and competency as a motorman was "bad," and that of "one who was continually running reckless at places where he should not;" that he was "very reckless," "a careless and reckless motorman," "a wild, careless sort of a fellow;" one who had worked with him stated that "he was a reckless runner;" another, "He was sort of reckless." Mr. Harget, a witness who had been superintendent of construction on a branch of the defendant company's

road between 1902 and 1904, testified that he had held a conversation with a Mr. Lawton, who was the superintendent of the division upon which Staley was then employed; that "in a discussion of the employees in general," Mr. Lawton mentioned Staley, and the witness then said that he had been a passenger on Staley's car upon several occasions, that he had observed his actions and thought Staley "very reckless;" that Lawton replied, "I know what you tell me is true, and eventually he will have trouble." The occasion for, or the object of, this conversation does not appear. There was testimony also of a statement or complaint made to a Mr. Fitch, one of the dispatchers of the defendant, concerning Staley on a particular occasion when his car ran off the track. This Mr. Fitch was the only witness produced by the defendant. He testified that he had been with the company since 1902; that he had worked himself up from motorman to division superintendent; that he had known Staley for some years; that he had seen him operating his car frequently between 1902 and 1905; that "Mr. Staley was a good, competent motorman;" that he did not remember that the alleged complaint had been made to him. Speaking in reference to the operation of the cars, he further testified that "the proper person was the division superintendent to make complaints to," and that "complaints of the character of which you were speaking should go properly to the division superintendent."

The issues concerning Staley's incompetency and the defendant's knowledge of that fact, were submitted upon this testimony. The trial judge instructed the jury that it was incumbent upon the plaintiff to establish "that Staley was an incompetent motorman because of his reckless and careless habits; that the fact that he was incompetent to occupy the position which he did was known, or, under the circumstances, should have been known, if reasonable, ordinary care had been exercised by the defendant corporation." This was followed by explicit instructions upon the several points in the case

and the law in relation thereto, as appears by the abstract from the charge printed in the reporter's notes preceding this opinion.

While we find no reversible error in the statements of law contained in the charge, the point is, Was there any evidence to justify a submission of the issues in question? Counsel for the appellant argues that there was not; that the plaintiff had not produced anything more than proof of reputation; "that under our authorities proof of reputation is good evidence only when it relates to the character of the person prior to the employment, and that such evidence is not admissible when the alleged incompetency of the employee arises after his lawful employment; as to the latter, proof of actual incompetency must be made." He further argues that the evidence offered by the plaintiff was faulty in that it did not tend to prove a bad reputation for the particular kind of negligence which caused the injury in this case. We must consider the soundness of these propositions.

The leading case in Pennsylvania upon the subject of the evidence required to show the incompetency of a fellow-servant is Frazier v. R. R. Co., 38 Pa. 104. There the action was by a brakeman to recover damages for personal injuries caused by the negligence of a conductor. The declaration averred that the defendant had "on the day on which the collision happened, carelessly and wrongfully put the said train under the conduct and charge of one Henry Schaeffer, in the capacity of conductor, etc.; that said Schaeffer was at the time a 'reckless, untrustworthy, careless and negligent man, and not skilled in the duties which appertained to the office or situation of a conductor of a train.' . . .; that said company at and before that time, well knew that Schaeffer was a careless, . . . . man, . . . .; or that the defendant might with proper care have known the character of the conductor. . . ." At the trial the plaintiff proved that Schaeffer "had had several collisions on the road before, for which he was fined by the company, and that the

agents, etc., of the company, knew this; that the former collisions were caused by his carelessness. . . ." The report further shows that the defendants objected to this testimony on the ground that "previous acts of negligence are not matter for the jury as to general character." In reversing the judgment, Mr. Chief Justice Lowry said: "The fundamental averment here is that it was because of the carelessness of the conductor that the brakeman was injured, and, in order to show that the company was responsible for this it is averred that they were in fault in knowingly or negligently employing a careless conductor. . . . The question of character thus became an important one, and we are constrained to say that it was tried on improper evidence. Character for care, skill and truth of witnesses, parties or others, must all alike be proved by evidence of general reputation, and not of special acts. The reasons for this have been so often given that we need not repeat them: 1 Greenl. Ev., secs. 461–469; Elliott v. Boyles, 31 Pa. 65." From the report of this case, it is evident that the negligence averred was not the employment of an incompetent conductor, but the retention of the conductor after his incompetency had arisen. This is clearly demonstrated when we consider the pleadings, and the fact that the very testimony, the admission of which caused the reversal, was of particular prior acts of negligence committed by the conductor while he was in the employ of the defendant company. When the writer of that opinion used the word "employing," he evidently meant it in the sense of "keeping in employ," and where he subsequently used the word "employ," it was in the sense of "have in its employ." Therefore, at the very outset we meet with this case which is squarely against the contention of the appellant.

A study of the other cases submitted by counsel for the appellant, and of those disclosed by our own research, fails to convince us that this court has modified or departed from the rule laid down in the Frazier case. At

first blush Huntingdon & Broad Top Mountain R. R. & Coal Co. v. Decker, 82 Pa. 119, would seem at variance with that case, but consideration will show this not to be the fact. The offer there was to show that the conductor, whose competency was at issue, was "of intemperate habits; that he had been repeatedly discharged by McKillips (the superintendent) for disobedience of orders and drunkenness." In sustaining the admission of this testimony, we said, "It was clearly competent to prove Bowser's (the conductor's) accustomed disobedience of orders and his habitual drunkenness; that these facts were known to the superintendent, who had the entire control and management of the road, including the right to employ and discharge conductors." Proof of the disobedience of an order differs from proof of a special act of negligence. The former would usually present a single issue, whereas the latter, to be of any real value, would practically mean the trial of another negligence case; and, if more than one special act were alleged, it would mean the trial of as many negligence cases as there might be specific acts of negligence involved. In addition, in the case under review, the element of habitual drunkenness was coupled with the disobedience of the orders, and we have expressly ruled, "if by direct evidence it appear that the conductor was a man of intemperate habits, it would cast upon the defendants the burden of proving that he was not intoxicated at the time. . . . Where a habit of intoxication in a conductor is shown, it raises, in the case of an accident, the presumption of negligence:" Penna. R. R. Co. v. Books, 57 Pa. 339.

The case of Snodgrass v. Carnegie Steel Co., 173 Pa. 228, relied upon by the appellant, is not at variance with the Frazier case. In the first place, Mr. Justice GREEN starts his opinion by quoting the rule laid down in the Frazier case; after which he says: "In order that the plaintiff might recover against this defendant he was bound to show by affirmative testimony, . . . . (2) that Snyder was an incompetent servant for the duty he had

to perform, and (3) that the fact of his incompetency was known to the defendant when he was employed by means of his having a reputation for incompetency or by acquiring a knowledge of it during his employment and before the accident." There is nothing in this which rules that incompetency arising after employment, or the knowledge of such incompetency, could not be proven by evidence of general reputation. Then, too, the opinion in that case expressly states that there was no proof that Snyder had the reputation of being incompetent. "Not a word of testimony was given or offered on this most vital subject. Not a witness testified that he had such a reputation."

The appellant calls our attention to the case of Stasch v. Cornwall Ore Bank Co., 19 Pa. Superior Ct. 113; concerning which it is sufficient to say that the case relies upon those we have already cited, and there is no ruling in it at variance with our decisions. The latest Pennsylvania case upon the subject is Zeigler v. Simplex Foundation Co., 228 Pa. 64, which is in accord with our other cases.

When we look at the cases cited from other jurisdictions, there seems to be a divergence of view in the different states. The law of New York is that incompetency cannot be shown by general reputation, but must be shown by specific acts: Park v. N. Y. Cent., etc., R. R. Co., 155 N. Y. 215; the same rule prevails in California: Gier v. Los Angeles Consolidated Electric Ry. Co., 108 Cal. 129, and in Indiana: Pittsburg, Ft. Wayne & Chicago Ry. Co. v. Ruby, 38 Indiana, 294; while Massachusetts follows the Pennsylvania rule, holding evidence of specific acts to be inadmissible on the ground that, "they would necessarily have a tendency to confuse the case by collateral issues, to protract it indefinitely if those inquiries were carefully made, and to mislead and distract the court and jury from the true issue:" Hatt v. Nay, 144 Mass. 186.

It is not necessary to prove that the person whose

competency is at issue had a bad general reputation for the precise character of negligence which caused the injury. Proof of habitual recklessness and carelessness in the work he is employed to do is sufficient. In Frazier v. Penna. R. R. Co., 38 Pa. 104, the court charged: "The question is was he a careful and competent conductor? Or was he careless and imprudent and incompetent in the discharge of his duties? If he was the latter, and the company knew it, it was their duty to discharge him. And their neglect in not discharging him renders them liable for any injuries resulting from his carelessness, although it might not be of the same specific character of the careless acts he has been guilty of before." While the assignment of error embracing this particular instruction was not expressly passed upon, the opinion in that case ends by saying: "These views seem to cover all the points that stand in need of correction by us." In Huntingdon, etc., R. R. & Coal Co. v. Decker, 82 Pa. 119, where the negligence was the failure on the part of a conductor to obey an order, and the incompetency of the conductor was at issue, evidence was admitted to show that his "character, as a conductor was that of a reckless, careless man . . . . who was unfit for the position of conductor." In reversing upon other assignments, we said that we discovered no substantial error in the remaining assignments, among which was one covering the admission of the testimony just referred to.

Our conclusions upon the points under consideration can be best summed up in the language of the learned judge of the court below in his opinion refusing a new trial: "Character in Pennsylvania is established by reputation and not by specific acts. The law recognizes that a careful man may sometimes do acts of negligence, and it is only the care or character of the ordinary man that is required. Besides, the introduction of evidence of specific acts of negligence would confuse the issue on trial. Every alleged act of negligence would raise a new issue which would have to be tried and determined by

the jury. It would be unfair to the defendant, for he would have no notice and no opportunity to meet the alleged acts of specific negligence." Aside from these practical reasons for excluding evidence of specific acts of negligence, the theory seems to be that, when a servant's general reputation for negligence, carelessness or incompetency is properly established, the reputation is assumed to reflect the character to such an extent that the fact of the actual existence of such a character may be found therefrom, as well as the fact of the master's knowledge that the servant had such a character. We are of the opinion that no error was committed in admitting the testimony of general reputation, or in submitting it to the jury on the issues as to the incompetency of the motorman and the defendant's knowledge thereof. Although the testimony set forth in some of the assignments, standing alone, may appear faulty, it has a different aspect when taken with its context; and as a whole, it was sufficient in quality and quantity to justify its submission. The assignments of error three to eleven, inclusive, are all dismissed.

The first two specifications of error go to the refusal of binding instructions and to the denial of judgment for the defendant. While these assignments simply raise the question of the sufficiency of the evidence produced by the plaintiff, we take occasion to say that there was no effort on the part of the defendant to meet the evidence of bad reputation by counter evidence of good reputation; and there was no attempt to show by the official designated to receive complaints or by the official whose duty it was to discharge, that in point of fact they did not know of the motorman's bad reputation, or to show that prior to the accident the defendant had investigated and had failed to find any foundation for the alleged bad reputation. After producing one witness who expressed his opinion that Staley was a competent motorman, the appellant rested its case. We cannot rule that the court below was in error in refusing binding instructions or

in subsequently refusing to enter judgment n. o. v. for the defendant. Assignments one and two are dismissed.

The twelfth assignment raises a point not yet touched upon. In addition to the evidence of general reputation, the plaintiff relied upon the statement made by Mr. Lawton to the witness Harget. The testimony is very meager, but it might justify the inference that Harget was addressing Lawton as a division superintendent, and that the conversation was in reference to the recklessness of Staley as a motorman. No denial of this conversation was entered by the defendant, and the plaintiff argues that when Mr. Lawton said, "I know what you tell me is true, and eventually he (Staley) will have trouble," he uttered an admission showing knowledge on the part of the company of the incompetency of Staley. The appellant replies that the evidence was too vague to justify a finding thereon, and besides, as there was no evidence that Mr. Lawton had the power to employ and discharge, his admission could not bind the defendant company. There was evidence, however, that Mr. Lawton was the general superintendent of the division in which Staley was employed, and that he was the person designated to receive complaints concerning employees and their management of the cars. This being the fact, any knowledge of Staley's incompetency possessed by Lawton in his official capacity, would be fixed upon the officer whose duty it was to employ and discharge men, and hence upon the defendant company. But the appellant points to the case of Snodgrass v. Carnegie Steel Co., 173 Pa. 228, and contends thereunder that the evidence was of no value to show an admission. The information conveyed and the reply made by the superintendent in that case are of a different character from those in this case, and the one does not in any sense rule the other. We are of the opinion that, when properly shown, Mr. Lawton's admission of knowledge of the incompetency of an employee would bind the defendant company. It is not necessary to decide whether or not the testimony

offered was sufficient for that purpose, as the judgment in this case must be reversed on other grounds which we are about to discuss. But since the case will go back for a new trial, we call attention to the fact that the testimony concerning Mr. Lawton's alleged admission and his powers and duties as division superintendent, as it appears upon the present record, is most lacking in essential detail. Testimony of this character must be susceptible of much fuller and more satisfactory presentation. We dismiss this assignment as we did the others.

The particular matters which require reversal are called to our attention in the two remaining specifications, and we will rule the case upon those assignments. Under the thirteenth specification the appellant assigns for error that part of the charge in which the trial judge said: "Now, in passing upon the question, . . . . as to whether or not Staley's character or care was known or should have been known to his employer, you consider the evidence of his reputation and the evidence of the information given to the different persons in the employ of the defendant company." Immediately before this the judge had referred to the fact that statements concerning the character of Staley had been made to the "dispatchers" of the defendant company. The admission of this testimony is assigned for error under the fourteenth specification. It consisted of the narration of a statement concerning Staley, made by the witness to the dispatcher named Fitch, as follows: "We got off the tracks out past Castle Shannon there, and of course it was our place to make a report about it, and I says to Fitch, 'that man runs like a crazy horse.' There was a sign up there 'run slow,' crossing a new bridge down there between Arlington and Castle Shannon; and we went off the track there." This is dangerously near evidence of a special or particular act of negligence, and, as such, in conflict with Frazier v. R. R. Co., 38 Pa. 104.

Although the trial judge immediately explained to the jury that the testimony in question was not accepted as

evidence of negligence, but merely to fix the time of a conversation, the trouble is that it was not proper evidence for any legitimate purpose. Moreover, its admission and subsequent submission to the jury, as evidence from which the fact of notice might be found, was directly contrary to our rule in Reiser v. Penna. Co., 152 Pa. 38. There the negligence complained of was the employment of an incompetent telegraph operator, and, in affirming a judgment for the defendant, we said: "Did the Company have notice while Crossman was in its service that he was incompetent? We think not, unless notice to Pardue was notice to the Company." Pardue was the defendant's company's "chief train dispatcher," and we held that, in the absence of testimony showing that he had the power to employ and discharge its servants, notice to him was not notice to the defendant company. The only other case which we find touching upon this subject is Huntingdon, etc., R. R. Co. v. Decker, 82 Pa. 119, where the plaintiff proved complaints made to a train master. In disposing of the question of the admissibility of this testimony, we said that "Under the whole evidence we discover no substantial error." But there the report shows that the complaints to the train master had been transmitted by him to the general superintendent who had power to employ and discharge. In the present case there was no testimony that the dispatcher had the authority to employ or discharge, or that he transmitted the complaint to one who had such power. We cannot say that the admission of the testimony was harmless error; for it is only reasonable to assume that the evidence concerning the complaint to the dispatcher must have had substantial weight in affecting the determination of the questions at issue. Not only may it have been the deciding element in determining the substantive issue of incompetency, but Mr. Fitch, to whom the complaint was made, was the sole witness produced by the defense and his testimony was relied upon to overcome the plaintiff's testimony as to the

motorman's bad reputation.  After testifying to facts showing long observation of Staley, he was allowed to express the opinion that "Staley was a good, competent motorman:" (see Gahagan v. Boston & Lowell R. R. Co., 83 Mass. 187.)  As Mr. Fitch was obliged to meet the plaintiff's story concerning the complaint made to him, and to submit to cross-examination on that point, it well may be that his value as a witness was utterly destroyed by this irrelevant testimony which was admitted against the objection of the defendant, and not withdrawn from the jury.

In a line of cases commencing with Delaware & Hudson Canal Co. v. Barnes, 31 Pa. 193, followed by Huntingdon, etc., R. R. Co. v. Decker, 82 Pa. 119; Erie etc., R. R. Co. v. Smith, 125 Pa. 259; Rathgebe v. Penna. R. R. Co., 179 Pa. 31; Hamory v. Penna., etc., R. R. Co., 222 Pa. 631, and Willock v. Beaver Valley R. R. Co., decided to-day, we have held that "where evidence has been improperly received which tends to prejudice the minds of the jurors, the error is not cured by an instruction to disregard it;" and we have said, "It may be withdrawn by the party who has given it, or the Court may withdraw it and positively instruct the jury to disregard it—to discard it from their view.  In such a case, it is the duty of the Court to see to it that no mischief is done; that the illegal evidence be withdrawn, wholly withdrawn, and withdrawn for every purpose:" Delaware & Hudson Canal Co. v. Barnes, 31 Pa. 193.  We have further said that it must be stricken from the record before counsel make their addresses to the jury.  Here, not only was there a failure to withdraw the objectionable testimony, but it was submitted to the jury, and they were told to consider it in determining the issues.  We are constrained to hold that this constituted error for which we must reverse.

The thirteenth and fourteenth assignments are sustained, and the judgment of the court below is reversed with a venire facias de novo.