## John Snodgrass *v.* The Carnegie Steel Company, Appellant.

[Marked to be reported.]

*Negligence—Fellow servants—Employment of unskillful workmen.*

Where a servant claims that an injury was caused to him by the negligence of an incompetent fellow servant, and that the master did not exercise proper care in the employment of the fellow servant, the burden is upon the person injured to show that the master was negligent in selecting the servant who caused the injury.

In an action by a servant against his master to recover damages for personal injuries where the plaintiff claims that the injury was caused by an incompetent fellow servant whom the master had negligently employed, the plaintiff in order that he may recover, must show by affirmative testimony (1) that the accident was the result of some negligent act or omission of the fellow servant; (2) that the fellow servant was incompetent for the duty he had to perform; (3) that the fact of his incompetency

was known to the defendant when he was employed by reason of the fellow servant having a reputation for incompetency, or that the defendant had knowledge of the incompetency during the employment and before the accident.

Where the cause of the injury to the servant is a boiler explosion, and it is alleged that the engineer failed to maintain a proper elevation of water in the boilers, but the only witness examined on the subject states that he could not positively say what caused the explosion, the injured servant is not entitled to recover from the master, although there might be evidence of the incompetency of the engineer.

A servant cannot recover from his master for an injury caused by a boiler explosion, on the ground that the master had knowledge of the incompetency of the engineer through whose negligence the accident was alleged to have been caused, where the only evidence of such knowledge were declarations of the plaintiff that he told the chief engineer that the engineer was incompetent, without any statement as to how or why he was incompetent, and without any proof of actual incompetency, and such declarations are denied by the chief engineer.

Argued Nov. 5, 1895. Appeal, No. 142, Oct. T., 1895, by defendant, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1894, No. 40, on verdict for plaintiff. Before Sterrett, C. J., Green, Williams, McCollum, Mitchell, Dean and Fell, JJ. Reversed.

Trespass for personal injuries. Before Magee, J.

The facts appear by the opinion of the Supreme Court.

Defendant presented, inter alia, the following points:

1. There being no evidence in this case as to the cause of the accident, the verdict must be for the defendant. *Answer:* This is refused; I decline to say that. [4]

2. There being no evidence in this case that the accident resulted from any negligent act or omission on the part of Frank Snyder, the verdict must be for the defendant. *Answer:* This point is refused. I decline to affirm that; it is a question of fact. In other words, I leave it as a question of fact to be determined by you, whether or not there was any act or omission on the part of Frank Snyder from which accident resulted. [5]

4. That under all the evidence in the case the verdict must be for the defendant. *Answer:* Of course, if I affirmed that I would be taking it from the jury altogether. This point is refused. [6]

Verdict and judgment for plaintiff for $4,500. Defendant appealed.

*Errors assigned* were (4, 5, 6) above instructions, quoting them.

*Edwin W. Smith, P. C. Knox, James H. Reed* and *Gibson D. Packer* with him, for appellant.—There was no competent evidence as to Snyder's incompetency: Mansfield Coal Co. v. McEnery, 91 Pa. 185; Oil City Fuel Co. v. Boundy, 122 Pa. 449; Steamship Co. v. Landreth, 102 Pa. 131; Erie & W. V. Co. v. Smith, 125 Pa. 259.

The court erred in admitting testimony as to a particular act of Snyder: Frazier v. Penna. R. R., 38 Pa. 104.

There is no evidence that the accident was caused through Snyder's incompetency: Brunner v. Blaisdell Bros., 170 Pa. 25; Ford v. Anderson, 139 Pa. 261.

*Thos. M. Marshall, Rody P. Marshall* with him, for appellee.—The rule that the character of a man must be proven by evidence of his general reputation has been somewhat relaxed: Frazier v. Penna. R. R., 38 Pa. 104; Huntingdon & Broad Top etc. R. R. v. Decker, 82 Pa. 119.

All the cases cited by the appellant, wherein it was held error to allow evidence of admission to be introduced, were cases where the admissions were made after the transaction was fully completed, and were therefore merely narrations of past transactions: Schaffer v. Haish, 110 Pa. 575; Erie & W. V. R. v. Smith, 125 Pa. 259; Rees v. Livingston, 41 Pa. 113; Huntingdon & Broad Top etc. R. R. v. Decker, 82 Pa. 119.

The accident was caused by the incompetency of Snyder, and there was sufficient evidence to prove his incompetency: Laning v. R. R., 47 N. Y. 521; Penna. R. R. v. Books, 57 Pa. 339.

OPINION BY Mr. JUSTICE GREEN, January 13, 1896:

The solitary ground upon which it is claimed that the defendant was liable in damages for the plaintiff's injury, is that the defendant was guilty of negligence in employing a fellow servant by whose negligence the injury was occasioned. This makes it necessary to inquire for a moment what is the law in regard to

this kind of liability. The rule of law on that subject is very clear and altogether unquestioned. It is thus expressed in the case of Frazier v. The Pa. R. R. Co., 38 Pa. 104. " The fundamental averment here is that it was because of the carelessness of the conductor that the brakeman was injured, and in order to show that the company was responsible for this, it is averred that they were in fault in knowingly or negligently employing a careless conductor. . . . The question of character thus became an important one, and we are constrained to say that it was tried on improper evidence. Character for care, skill and truth of witnesses, parties or others, must all alike, be proved by evidence of general reputation and not by special acts. The reasons for this have been so often given that we need not repeat them: 1 Greenl. Ev. sections 461–469; Elliott v. Boyles, 7 Cas. 67. Character grows out of special acts but is not proved by them. Indeed, special acts do very often indicate frailties or vices that are altogether contrary to the character actually established. . . . Besides this, ordinary care implies occasional acts of carelessness, for all men are fallible in this respect, and the law demands only the ordinary."

In Ardesco Oil Co. v. Gilson, 63 Pa. 146, SHARSWOOD, J., delivering the opinion says, " There is no difference between liability to a stranger and to a servant for a man's own negligence or want of skill; though a master is not responsible for an injury to a servant by the negligence of a fellow servant, unless he has failed in ordinary care in the employment of the culpable party," citing a number of authorities.

In Mansfield Coal etc. Co. v. McEnery, 91 Pa. 185, Mr. Justice PAXSON, delivering the opinion, said, " The deceased having lost his life by the giving way of defendants' bridge, over which he was passing at the time with a mule team, it was a necessary part of the plaintiff's case to show that the bridge had not been properly constructed. The defense was that the defendant had exercised ordinary skill and care in the selection of employees to construct it. The defense is ample if made out. . . . The defendants showed and it was not disputed that they employed Henry Willard to construct this bridge and that he was a carpenter and bridge builder of experience. It is not enough for the plaintiff to show that his work was unskillfully done or that he was incompetent. It must appear that the

defendants were guilty of negligence in selecting him; that they either knew he was incompetent, or with proper diligence might, or ought, to have known it. The law presumes they exercised ordinary care and skill in making the selection. The defendants are as much entitled to this presumption as the plaintiffs are to the presumption that the deceased exercised ordinary care in crossing the bridge. It will not do to have all the presumptions on one side. It follows that the burden of proof of showing that the defendant did not exercise ordinary care and skill in the employment of Mr. Willard rests upon those who assert it," citing many cases. It is unnecessary to extend the citations. The law as above stated is unquestioned.

It is only necessary now to recur to the testimony in order to determine whether it conforms to the requirements established by the foregoing decisions. The writer has read the whole of the testimony delivered on the trial with the utmost care, and is obliged to say that it utterly fails to establish a single condition of liability in this class of cases. There is absolutely no evidence in the cause that the defendant employed an incompetent person whose negligence caused the plaintiff's injury, either knowing, or having any reason to know, the fact of his incompetency. The theory of the plaintiff's case is that he was injured by escaping steam from a boiler in the defendant's works which exploded, and that the explosion was the result of the negligence of one Snyder, who was a fellow servant with the plaintiff in attending the boilers in the boiler house of the defendant. They were both engaged in the same service, twelve hours each out of the twenty-four, and the particular service was keeping the boilers properly supplied with water at all times. The explosion took place about one o'clock in the day while Snyder was on duty, Snodgrass, the plaintiff, having gone off at twelve o'clock, one hour before. In order that the plaintiff might recover against this defendant he was bound to show by affirmative testimony, (1) that the explosion was the result of some negligent act or omission of the fellow servant Snyder, (2) that Snyder was an incompetent servant for the duty he had to perform, and (3) that the fact of his incompetency was known to the defendant when he was employed by means of his having a reputation for incompetency or by acquiring a knowledge of it during his employment and before the accident.

The first difficulty with the plaintiff's case is that he entirely fails to prove that the explosion was the result of any negligent act or omission of the fellow servant, Snyder. At the end of the plaintiff's testimony there was no evidence to prove what was the cause of the explosion. The plaintiff did not give, or attempt to give, any evidence on that subject. The fact of the explosion was proved and the injury to the plaintiff, but no witness was examined and no testimony was given, or offered, to show the cause of the explosion. Of course boiler explosions may occur from different causes. Defective material, overburning weak parts of the boiler, so as to cause attenuation of the plates, overheating by the person in attendance before the fellow servant went on duty, an insufficient supply of water to the proper elevation indicated by the gauge cocks, and a sudden inpouring of cold water on the heated plates, all of these were testified to as causes which might produce explosions. But out of them all there was only one for which the fellow servant in charge at the time of the explosion would be responsible, and that is the omission to maintain a proper elevation in the boilers. On that subject there was not a particle of testimony in the cause. The only witness who was examined on the subject of the cause of the explosion was W. F. Bailey, the man who had charge of this part of the work. He was asked on cross-examination what caused the boiler to explode, and replied that there were different causes that might have occurred, explaining them. He added, " Well, I am under the impression we were short of water in the boilers. Still, as I say, that sheet might have been heated on the turn before this man came on, and that the great heat that was in there and the pressure of steam still in that boiler would draw that sheet until it would stand no longer and get very thin, and then, if they got a little more pressure on the boiler than what there had been before that, it might have let go." He was asked, " Q. In your opinion it was the want of water that caused that boiler to blow up? A. I won't say positively, there was at one time ; but, I wouldn't say it was at the time it let go ; there was a great deal of water came out of it at the time it let go." After saying that the flues were not collapsed and that not a rivet was put in them when the boiler was repaired, he was asked, " Q. You don't know what caused that boiler to explode ? A. No sir; not positively."

There was no other testimony than that of this witness on this subject, and the substance of his testimony was that there were different causes that might have produced the explosion and he did not know how it was produced.   When it is considered that there can be no recovery unless the plaintiff proves by affirmative testimony that the cause of the explosion was one for which the defendant was liable, and he simply proves that the cause was unknown, his proof is radically defective and he cannot recover for that reason.   The jury could only reach a verdict by conjecture without proof; and this, as we have many times said, is insufficient.

But in the next place there was not a particle of proof in the cause that the defendant employed the fellow servant knowing that he was incompetent, and there was no proof that he had the reputation of being incompetent.   Not a word of testimony was given or offered on this most vital subject.   Not a witness testified that he had such a reputation.   One witness, Bebout, said he had known him for several years before the accident and that he knew him as being engaged in other pursuits at different times, but not a word did he say touching his reputation as a workman or as a boiler tender.   There was a total failure of proof that the man had any reputation as an incompetent workman where he was employed.   But there was affirmative proof by the defendant's witness, Bailey, that when Snyder came there he was recommended as an engineer, that he took him around the boilers and explained to him what he was to do, that he was intelligent and understood at once what he was to do and took it up immediately, that he regarded him as an entirely competent workman and never had any occasion to think otherwise.

In the absence of any proof of bad reputation as a workman, the plaintiff undertook to prove his incompetency and the defendant's knowledge of it by testifying that on two or three occasions he told Bailey that Snyder was not a fit person to tend the boilers.   His testimony was that on August 23, " I told him (Bailey) that that man was not capable of handling them boilers and he said he knowed he wasn't, and he says, 'Do the best you can for a few days.' "   He said he again complained on the following Saturday, the 27th, that Snyder, " came in the boiler house and put a monkey-wrench on to one of the

feed valves and gave it a twist and broke it and let the hot water run out. Q. What did you do? A. I ran after Bailey and I couldn't find him, and so I got the pipe fitters and put another valve in. Q. Did you say anything to Mr. Bailey at that time? A. After we got the stream started I says, 'You didn't get a man in Snyder's place; now you can get one in mine;' and he says, 'No, you stay where you are, and I'll get you a man right away.' Q. What else? A. He said Snyder was all right; there was no danger of burning or doing any harm to the boilers, to just watch him." On one other occasion soon after Snyder came, the plaintiff says, "I told him (Bailey) there was too many boilers for the man to handle; that he was not competent." There are three radical defects in this testimony to make out the essential requirement of the plaintiff's case. (1) It is the mere declaration of the plaintiff that he told Bailey that Snyder was incompetent, without any statement as to how or why he was incompetent. (2) It contains no proof of any actual incompetency. (3) The declarations are absolutely denied by Bailey, who is a disinterested witness.

As to the first it will be observed that the witness simply says he told Bailey that Snyder was incompetent but gave no reason for saying so, and gave no particulars in support of his statement. He did not say, but implied, on the last occasion mentioned that he was incompetent to handle so many boilers, which would be his opinion only as to Snyder's physical competency. On the occasion of Snyder's breaking one of the feed valves with a wrench it did not follow that he was in the least degree incompetent, as the valve might have broken from inherent weakness and there was no explanation. On the other occasion he merely said Snyder was incapable of handling the boilers. Bearing in mind now that the undertaking of the plaintiff is to prove the knowledge by the defendant of Snyder's actual incompetency, and retaining him in their employment after such knowledge, it will be seen at a glance how entirely inadequate the foregoing proof is to that exigency. The plaintiff does not claim that he informed Bailey of any actual facts showing real incompetency, and therefore they could not have any knowledge on that subject. The plaintiff's declaration might be true or it might not, but it did not impart the least information of

any actual incompetency and therefore it cannot be said that the defendant had any such knowledge.   Nor is a jury in any better situation as to this essential fact.   How can they find upon such testimony that the defendant had any knowledge of any actual incompetency of Snyder?   It is impossible because the jury don't know themselves whether such was the fact.

In the next place not a particle of proof of actual incompetency was given in evidence.   The plaintiff did not pretend to say that Snyder had done any acts which were careless or negligent, as for instance that he had allowed the water in the boilers to get too low.   There is not a fragment of testimony in the whole cause showing that or any other act of incapacity or negligence.   How then could the defendant have knowledge of any actual incapacity or negligence on the part of Snyder, and thereby become chargeable with the consequences of such knowledge?   The liability of the defendant does not arise upon the mere declaration of some witness of the fact of incompetency of their agent, but upon proof of the fact of actual incompetency imparted to them, and of that there is not a particle of proof in this case.

But in the third place the declarations such as they were are denied absolutely, emphatically and positively by Bailey, and the case stands upon the testimony of the plaintiff, a most deeply interested witness, in his own favor, and the entirely disinterested testimony of Bailey in flat contradiction.   It is not enough to reply that the jury is the judge of the credibility of witnesses.   The case involves a peculiar phase of liability depending upon the knowledge by the defendant of a certain fact.   Considering that there is no proof of the fact in question, and that there is no evidence in support of the charge of knowledge by the defendant except the interested declaration of the plaintiff himself against the disinterested denial of the declaration by the person to whom it was alleged to be made, the case presents nothing more than a mere scintilla of proof entirely insufficient to sustain a verdict.

But to cap the climax of the insufficiency of proof, it was not proved that the explosion of the boiler was the result of any negligent act or omission of the fellow servant, and nothing but a tissue of conjectures without any proof of actual facts to support them could enable a jury to find a verdict for the plaintiff.

But lawful verdicts cannot be rendered upon such principles. We are clearly of opinion that the evidence is entirely insufficient to justify a verdict for the plaintiff and therefore sustain the fourth, fifth and sixth assignments of error. It is not necessary to consider the other assignments.

Judgment reversed.