## Ault *v.* Cowan, Appellant (No. 1).

*Negligence— Railroads — Passenger — Injury by missile flying through window—Presumption of negligence.*

The rule that a presumption of negligence on the part of the carrier arises when a passenger is injured in the course of transportation, cannot be invoked without evidence tending to connect the carrier, or its employees, or some of the appliances of transportation with the happening of the injury. To throw the burden upon the carrier, it must be first shown that the injury complained of resulted from the breaking of machinery, collision, derailment of cars or something improper or unsafe in the conduct of the business or in the appliances of transportation.

In an action by a passenger against a railroad company to recover damages for personal injuries, the case should not be submitted to the jury where the evidence shows that while the plaintiff was seated in a car next to a window an explosion occurred which was immediately followed by a foreign substance crashing through the window next to that at which plaintiff sat, and then taking a rotary track, striking plaintiff on the head and crashing out through the window at which she sat, that there was nothing found inside the car or outside the car to show what the missile was, nor any evidence to connect the accident with any defect in the cars or machinery, the movement of the train, or any of the appliances of transportation, or with the explosion of a torpedo signal conjectured by the plaintiff as the cause of the accident.

Argued April 29, 1902. Appeal, No. 134, April T., 1902, by defendants, from judgment of C. P. No. 3, Allegheny Co., May T., 1899, No. 100, on verdict for plaintiff in case of David V. Ault and Etura K. Ault, his wife, against K. Cowan and Oscar G. Murray, Receivers of the Baltimore and Ohio Railroad Company and the Baltimore and Ohio Railroad Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before McCLUNG, J.

At the trial it appeared that on the evening of December 21, 1898, the plaintiff was injured while traveling as a passenger on one of defendant's trains. The circumstances of the accident are detailed at length in the opinion of the Superior Court.

The court charged in part as follows:

In this case, if there had been nothing more than the fact

that the window was struck by some missile which injured this lady, it would have been my duty to have taken the case from you upon the ground that the plaintiffs had not made out a case to go to the jury.  But the plaintiffs here submit evidence to the effect that there was a train passing at the time on the side on which these windows were broken, and to the effect that there was an explosion such as comes from the explosion of a torpedo, and also some evidence indicating that torpedoes were in the habit of being exploded in that neighborhood. This goes far enough, if not to shift the burthen of proof, or to raise the presumption in favor of the passenger who was injured, to carry the case to the jury.  It is for you, then, to say, first, whether this injury was caused by something that the railroad company's employees had control over, or something that they did; and then, whether the injury happened because they acted negligently with respect to this matter; because those things are both necessary in order that you should find the defendant responsible.

The accident itself does not prove that anybody is responsible.  That is, it is not of itself sufficient proof.  Of course, it is one link in the chain that shows the responsibility.  If nothing had happened, of course there would be no case against any one.  But the law recognizes the fact that accidents do happen without negligence; that is, without that which the law recognizes as negligence.  And when an accident happens in that way, then the party who is so unlucky as to be the subject of it has to bear the brunt of it; he cannot have recourse to any one else.

In order that you may find against the defendant here, it is necessary for you to find that this injury came from something done or neglected by the agents of the railroad company, and that that act or neglect was an act of negligence; that is, that it was something that would not have been done, or failed to have been done, by a person of reasonable prudence, under the circumstances.

It is conceded here by all parties that this accident is one difficult to be accounted for.  It is difficult to account for it upon the theory of the plaintiff.  It is difficult to account for it upon any theory that can be suggested by the defendant. The fact that an accident did occur still remains, and the prob-

lem is submitted to you of determining how it occurred. I don't mean by this that you are bound to account for it. You may conclude that it has not been accounted for, and that, therefore, you cannot fasten the responsibility upon the defendant company. You must conclude from the evidence that it was the result of the negligence of the defendant company before you can find for the plaintiffs in this case. That is the rule that is to govern you. Of course, the difficulty of accounting for the method in which it happened will naturally have something to do with determining that question. If you could find a much easier method of accounting for it upon the theory that it had been thrown by an outsider, you would adopt that, and no doubt will adopt it. But the theory upon which the law recognizes the fact that a case like this, or a case where there is evidence that another train was passing, shall go to a jury, whilst a case which has nothing of that sort in it shall not go to a jury—I say the theory of that holding is that the passing of this other train, to some extent, at least, excludes the idea of the missile having come from an outside source. I am not here to say that that is sufficient, or that that with this explosion is sufficient, or that that with all the other evidence in the case is sufficient. That is a matter for you. [I bring the matter down as closely to the point as possible, and thus seek to aid you in determining the question. But in the end it comes down to this: Are you convinced by the evidence submitted to you that this accident was caused by something connected with the running of this road which could have been prevented by the exercise of due and reasonable care by the employees of the road? It is not necessary that we should absolutely know how this thing occurred. You have in the case the testimony to the effect that it is hard to conceive how it could have occurred from a torpedo. I myself (and in speaking of these things, I am not seeking to bind you; I am talking about matters that it is for you to determine, and not for me) am unable to see how it could have occurred from the explosion of a torpedo placed on the right-hand track, the track farthest away from the train in which this lady was riding. If it was from a torpedo at all, and you conclude that it was from a torpedo placed on the other track, then was it negligence to place a torpedo there, considering the fact that trains were likely to

pass. Those are matters for you to consider in making up your minds in the case. I repeat, however, that you are not bound to find the method in which this accident occurred. That is, you cannot place the responsibility upon this defendant company simply because you can find no one else to bear it. You must conclude from all the evidence that the responsibility rightly belongs to the company because of its negligence.] [3]

The defendant presented these points:

1. That the evidence fails to show that the violence which occasioned the injury to the plaintiff, Mrs. Etura K. Ault, proceeded from the employees or servants of the defendant or was due in any way to any negligence on the defendant's part, and under such circumstances there can be no recovery by the plaintiffs, and hence the verdict should be for the defendant. *Answer:* This is refused. [1]

2. That under all the evidence in the case, the verdict should be in favor of the defendant. *Answer:* This is also refused.. [2]

Verdict and judgment for plaintiffs for $1,000. Defendant appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*John S. Wendt*, with him *Watson & McLeave*, for appellant.— Under the circumstances of this case, there was no presumption of negligence on the part of the defendants, and the burden of proof was on the plaintiffs to show that the injury was the result wholly of defendant's negligence: Thomas v. Phila. & Read. R. R. Co., 148 Pa. 180; Fleming v. Pittsburg, etc., Ry. Co., 158 Pa. 130; Penna. R. R. Co. v. MacKinney, 124 Pa. 462.

There being no presumption of negligence in this case, it was essential that the plaintiffs should give some competent affirmative evidence of what the missile was and how it was hurled through the car window, and that the elements causing the injury were in the exclusive management and control of the defendants, and that the result was so far out of the usual course that there is no fair inference that it could have been produced by any other cause than the negligence of the defend-

ants. If there is any other cause apparent to which the injury may, with equal fairness, be attributed, the inference of negligence cannot be drawn : Oil City v. Penna. Torpedo Co., 190 Pa. 350 ; Alexander v. Penna. Water Co., 201 Pa. 252 ; Savitz v. Lehigh, etc., R. R. Co., 199 Pa. 218.

Under the pleadings, the burden was on the plaintiffs to show by evidence circumstances from which it might fairly be inferred that there was a reasonable probability that the accident resulted from the negligent explosion of a signal torpedo by the defendants or their employees. Unless there were established facts which warranted the jury in finding such negligence, the plaintiffs cannot recover : Cornman v. Eastern Counties Railway Co., 4 H. & N. 781 ; Howard Express Co. v. Wile, 64 Pa. 206 ; Raby v. Cell, 85 Pa. 82 ; Wheelton v. Hardisty, 8 El. & Bl. 262 ; Ryder v. Wombwell, L. R. 4 Ex. 32 ; Phila. & Reading R. R. Co. v. Yeager, 73 Pa. 125 ; Phila. &. Reading R. R. Co. v. Schertle, 97 Pa. 450.

Under all the evidence, taking the case in its aspect most favorable to the plaintiffs, it is manifest that the plaintiff's case rested upon a supposable theory, not supported by established facts, and from the same facts several other just as probable theories are deducible, and neither one of them imputes liability to the defendants, therefore the plaintiffs cannot recover : Savitz v. Lehigh, etc., R. R. Co., 199 Pa. 218 ; Rotsell v. Warren Borough, 10 Pa. Superior Ct. 283 ; Alexander v. Penna. Water Co., 201 Pa. 252 ; Reinhardt v. South Easton Borough, 4 Atl. Repr. 533.

*A. O. Fording*, with him *F. P. Iams*, for appellees.—Plaintiffs' theory of the accident is " supported by proven facts, which are exclusively applicable to it," within the rule of this court in Rotsell v. Warren Boro., 10 Pa. Superior Ct. 283.

From the testimony there are several inferences, which required the submission of the case to the jury, and which justify the verdict, within the rule of Thomas v. P. & R. R. R. Co., 148 Pa. 180.

OPINION BY ORLADY, J., July 10, 1902 :

The plaintiffs in this action claimed to recover damages from the receivers of the Baltimore and Ohio Railroad Company for

injuries received by Etura K. Ault while traveling as a passenger on a regular train of the defendants, who " so carelessly and negligently operated said car, train, other cars, tracks and railway yards of said company then and there being operated by them, that as the said train and car upon which the said Etura K. Ault was then being carried, a certain torpedo signal or other explosive device, then and there under the control and management of said receivers, their agents and managers, was so carelessly and negligently used and controlled, that it exploded, and that a portion thereof passed through the window of said car in which said Etura K. Ault was then and there being carried and struck the said Etura K. Ault on the head, cutting and wounding the same in a dangerous manner." The plaintiffs were seated so that the wife was next to the car window and the husband at her side and next to the aisle on the left side of the train going west, a brother of the husband (George Ault) being seated next the window on a reversed seat immediately in front of and facing them. The accident occurred when passing through the railroad yards between Port Perry and Braddock Station, at about 7: 30 P. M. when it was quite dark. The parties were engaged in conversation when the first intimation they had of any trouble was a sound like the explosion of a gun, revolver or torpedo cap, and simultaneously with the explosion, there was a crash and the window at the side of George Ault was broken through by some foreign substance, from the outside, which struck him on the head, producing a contused wound without breaking the skin and for a short time rendering him unconscious. At the same instant of time Mrs. Etura K. Ault was struck on the upper left part of the forehead with a missile that caused a clean-cut wound two and a half inches long and a slight groove in the skull, in consequence of which she was rendered unconscious and did not recover from this condition until she received treatment by a physician in Pittsburg. The broken glass in the forward window where George Ault was seated was all thrown into the car, some of it going across the aisle. The glass from the window at which Mrs. Ault was seated was all thrown outside the car, not a particle of it being left inside. David Ault and George Ault, the passengers, and the trainmen proceeded promptly to make an active search for the cause, and, after care-

fully examining the car, so that, as stated by David Ault, " there was no possibility for anything to be left in the car that we would not have found," they failed to find any foreign substance, missile or projectile that could have caused the broken windows. The testimony of David K. Ault as to the cause of the accident is as follows: " Q. When the crush came you didn't know what was opposite your window, whether it was a locomotive or freight cars? A. No, sir; I didn't. Q. And the locomotive may have been considerably past at the time of the crash at the window? A. It may not have been there yet. Q. It may have come afterwards? A. It may have come just following the crash, which I can't say. Q. Then as I understand you, you don't know whether the cars were on the eastbound track that were there at the time of the accident? A. I stated that we were passing the cars immediately after the accident; that we were passing them then; I didn't say that we was not before because I don't know. Q. Do you know how many cars passed on the other track? A. I do not. Q. Do you know whether the explosion took place when the first car passed or after three or four cars had passed? A. No, sir; I don't. Q. Well, all you know about the source of the accident is that you heard a noise and simultaneously with that the window was broken and then the results followed to your brother and wife? A. Yes, sir. Q. Well, that sound you mentioned like an explosion, how could you determine that if it was simultaneous with the crashing through of this pane of glass? A. Well, it is pretty hard to explain how a person can designate these things; you get an impression of something; it was an impression of something I had at that time and I still retain; how I got the impression outside of the fact that it was given to me at that time I couldn't explain." In describing the injury to his wife, he testifies that over the wound the hair was cut as if you had cut it with scissors and it was clotted with blood. " Q. It began at the top of the forehead and extended back? A. Yes, sir. Q. Well, that cut was one that might have been made from its appearance by a piece of glass, might it not? A. Well, I couldn't say; it might be, but I couldn't see how glass would cut it that way. Q. Well, glass would make a clean cut, a sharp piece of glass would make a clean cut; it would probably sever the hair as you found the

hair severed?  A. Yes, sir; I suppose so.  Q. It would make a clean sharp cut in the scalp and might cause some little cutting of the bone substance, might it not?  A. I can't answer that for I don't know.  Q. Or a sharp stone might make a cut like that?  A. If it was sharp enough it might I have no doubt.  Q. And I suppose there are other missiles of different sorts which you can readily conceive having made a cut like that coming with sufficient force?  A. Yes, sir; a person could do it with a razor.  Q. And there are other missiles beside that?  A. Yes, sir." In searching for the cause of the accident, and supporting the allegation in the plaintiffs' statement that it was caused by a torpedo signal or other explosive device, David K. Ault testified that two days after the accident he went upon the ground and located the place by finding the broken glass at the end of the ties between the east-bound and west-bound tracks, and there found the bottom of an exploded torpedo, a piece of tin having attached to it flexible metal straps that are used for clamping a torpedo upon the rail, and this was produced in court.  There was snow upon the ground, which had fallen prior to the accident, and when he took up the piece of tin there was hanging to it "just one hair or piece of hair, but as quick as the snow melted it dropped off; whether it was gathered there either from the ground or any other source I can't answer.  Q. Was it a long hair like a woman's or a short hair like a man's?  A. It was four or five inches long at the time.  Q. Did you see anything of other torpoed shells or parts of them in that neighborhood?  A. Yes, sir; it was at a point where they used a good many of them, and I picked up quite a number of exploded shells and pieces. Q. Did you find those in the immediate vicinity of this one and the broken glass, or, if not, how far away?  A. Well, I found them principally on the right-hand side of the east-bound track and between the east-bound track.  This was the only shell that I picked up in the neighborhood of where the glass was or within thirty feet of it outside of right directly across the other tracks." It was testified to that the torpedo signal was a small tin box containing explosive material, and about the size of a silver dollar, fastened to the rail for the purpose of signalling to the engineer and which was exploded by the engine passing over it.  They were usually fastened on the

right-hand rail for the reason that that was the engineer's side on the cab. The body of a freight car projects over the line of the rail about two feet and the cars are about two feet above the rail, while a passenger coach body extends a little more than that over the rail and so that the broken window of the coach would have been about nine feet from the ground. Dr. Orr, a witness for plaintiffs, testified that he dressed the wound, and that such an injury as Mrs. Ault suffered might have been caused by anything with a sharp edge, even a coupling pin, if it had had sufficient force. At the conclusion of plaintiffs' evidence, a motion for a nonsuit was made, which was overruled. There is nothing in the testimony offered by the defendants to give any explanation of the cause of the injury.

At the conclusion of the testimony the court was asked to say to the jury: "First. That the evidence fails to show that the violence which occasioned the injury to the plaintiff, Mrs. Etura K. Ault, proceeded from the employees or servants of the defendant or was due in any way to any negligence on the defendant's part, and under such circumstances there can be no recovery by the plaintiffs, and hence the verdict should be for the defendant. Second. That under all the evidence in the case the verdict should be in favor of the defendant," both of which were refused, and the jury was instructed that, "in the end it comes down to this, are you convinced by the evidence submitted to you that this accident was caused by something connected with the running of this road, which could have been prevented by the exercise of due and reasonable care of the employees of the road? It is not necessary that we should absolutely know how this thing occurred. You have in the case the testimony to the effect that it is hard to conceive how it could have occurred from a torpedo. I myself (and in speaking of these things I am not speaking to bind you ; I am speaking about matters that it is for you to determine and not for me), am unable to see how it could have come from the explosion of a torpedo placed on the right-hand track, the track farthest from the train in which this lady was riding. If it was from a torpedo at all and you conclude it was from a torpedo placed on the other track, then was it negligence to place a torpedo there considering the fact that trains were likely to

pass.  Those are matters for you to consider in making up your minds in the case.  I repeat, however, that you are not bound to find the method in which this accident occurred; that is, you may not place the responsibility upon this defendant company simply because you can find no one else to bear it; you must conclude from all the evidence that the responsibility rightly belongs to the company because of its negligence."

In Thomas v. Philadelphia and Reading Railroad Co., 148 Pa. 180, a passenger was seated at an open window and was struck on the arm by a missile with sufficient force to cause a fracture of the arm.  It was not shown what caused the injury. The appellant did not see the missile nor was it found in the car.  There was no evidence that anyone was near the train on the outside who could have inflicted the injury.  The suit was brought to recover damages for the injury referred to.  The theory of the appellant was that it was caused by a loose nut thrown from one of the switches of the defendant's roadbed over which the train was passing at the time.  This was a mere theory, however, without any evidence to sustain it.  The Supreme Court held that the rule, that a presumption of negligence on the part of the carrier arises when a passenger is injured in the course of transportation, cannot be invoked without evidence tending to connect the carrier, or its employees, or some of the appliances of transportation, with the happening of the injury.  To throw the burden upon the carrier it must be first shown that the injury complained of resulted from the breaking of machinery, collision, derailment of cars or something improper or unsafe in the conduct of the business or in the appliances of transportation.  Under the evidence in this case there was nothing to connect the accident with any defect in the cars or machinery, the movement of the train, or any of the appliances of transportation, and there was nothing to submit to a jury.  It would be as reasonable to hold that a bullet fired into the car from without by means of which a passenger was killed was evidence of negligence on the part of the company.

Authority need scarcely be cited to establish that where an injury occurs to a passenger, in consequence of something connected with the appliances of transportation having been wrongly done or neglected, there arises the presumption of

negligence, which the carrier is required to rebut. But if the accident has no connection with the appliances or machinery, if it is so disconnected with the operation of the business of the carrier as not to involve the safety or sufficiency of the instrumentalities or the negligence of its servants, no such presumption arises, and the burden of proof to show negligence is upon the plaintiff who offers it: Fleming *v.* Pittsburg, etc., Ry. Co., 158 Pa. 130.

It is to be observed in this case that there is no testimony connecting the plaintiff's injuries with any matter or thing over which the defendants are shown to have had control. The extraordinary character of the accident and the erratic course of the missile or missiles which entered the window at the side of George Ault inflicting on him a contused wound on the back or side of his head, throwing the glass of that window entirely into the car, and inflicting a sharp incised cut on the head of Mrs. Ault and then passing out through the window at her side, and carrying all of the glass of that window outside the car, presents a force exerted in a rotary track not to be explained by any rule of physics. All that was shown was that the injury had happened. Careful search failed to find anything in the car which could have induced it, and the attempt to associate a part of an exploded torpedo cap found two days later along the roadbed where a number of these caps were lying is so remote and conjectural that as in the case of Thomas *v.* The Philadelphia & Reading Railroad Co., supra, "it was a mere theory without any evidence to sustain it;" and nowhere in the evidence does any witness for plaintiff go further than to say that such a substance might have produced such an injury. It was not shown in any manner to have been in contact with her head. The hair found with it in the snow two days after the accident is not even suggested to be that of a human being. No attempt by comparison was made to identify it with that of Mrs. Ault. There was no evidence that a torpedo was exploded by the passing train or that her injury was caused by a torpedo cap. There was no evidence at all in the case to connect her injuries with any appliance or means under the control of the defendants.

Where evidence on both sides is to be weighed so as to determine on which side the scales incline, the jury is the proper

tribunal. But where the weight on one side is so slight as not to incline the beam at all—nothing but a conjecture—then it is as much a question for the court as if even this scintilla was absent. The rule thus understood does not impair the true value of trial by jury. It restrains it from arbitrary power, which would endanger its existence, and might lead to its entire abolition, a result that would be very much to be deprecated: Howard Express Co. v. Wile, 64 Pa. 201. In Reading & Columbia Railroad Co. v. Ritchie, 102 Pa. 425, it was held that if the undisputed evidence disclose no negligence on the part of the defendant, it is error to submit the case to the jury as an open question. This rule has been followed in many cases: Lehigh Coal & Navigation Co. v. Evans, 176 Pa. 28. It will not do to submit a case to the jury without evidence, when the verdict has no better foundation than a guess or at most mere possibilities : Reese v. Clark, 146 Pa. 465.

In Snodgrass v. Carnegie Steel Co., 173 Pa. 228, a verdict recovered in the court below was set aside for the reason that the evidence did not disclose any negligent act or omission on the part of the plaintiff, and that it disclosed nothing further than a tissue of conjectures without proof of actual facts to support them. In Savitz v. Lehigh, etc., R. R. Co., 199 Pa. 218, where the testimony admitted was all directed to show that the accident might have been caused by the point of a switch not closed against the main track tightly enough to prevent the wheels of the truck entering the siding, and was at the same time only one of several possible, if not equally probable, causes shown—the others being a defective truck, defective equipments of the engine and an obstruction on the track—it was held that it would be mere conjecture and speculation and wholly insufficient to sustain a verdict in favor of one on whom the burden of affirmative proof of negligence rested. In Alexander v. Penna. Water Co., 201 Pa. 252, the Supreme Court says : " The plaintiff proved that an accident happened causing him grievous injury and the jury guessed it resulted from negligence of the defendant. They should not have been allowed to guess. There can be no recovery unless the plaintiff proved by affirmative evidence that the cause of the explosion was one for which the defendant was liable, and when he simply proves that the cause was unknown his proof was radically

defective and he cannot recover for that reason. The jury could only reach a verdict by conjecture without proof; and, as we have many times said, that is insufficient": Snodgrass v. Carnegie Steel Co., 173 Pa. 228; Shafer v. Lacock, 168 Pa. 497.

It must be conceded that the cause of this accident was entirely conjectural. The character of the wound did not indicate the kind of missile or object producing it or that it was caused by one or more objects. Whatever it was it came from an unknown source. The plaintiff could not say whether the passing train was the source of propulsion. The description of the place where the torpedo would be placed and the conformation of the cars in connection with the height of the window above the track, furnish no ground for any reasonable theory connecting these injuries with a torpedo exploded on either track, and the learned judge erred in saying, " You are not bound to find the method by which the accident occured," in that there must be a reasonable connection between the injury and the source from which the instrumentality causing it comes. The plaintiff frankly concedes that the wound might have been produced by one of several objects, and fails to connect it with any negligent act or omitted duty on the part of the railroad company. Under this view of the case, defendant's second point, " that under all the evidence in the case the verdict should be in favor of the defendant," should have been affirmed.

The judgment is reversed.