## Commonwealth v. Myers.

*Evidence—Credibility of witness—Impaired mental condition—Incompetent to attack witness by testimony of physician.*

1. Medical expert testimony is inadmissible to attack the credibility of a witness by showing that he was of impaired mental condition at the time of the events in regard to which he testified, and his condition has not since improved.

2. It is for the court to determine whether a witness is competent, *i. e.*, whether he understands the nature of an oath and is capable of testifying; it is for the jury to determine the credit to be given to the witness by his manner on the stand, and his testimony under examination.

Motion for a new trial. Q. S. Cumberland Co., Feb. T., 1924, No. 10.

*John E. Myers* and *M. F. Hummell*, for plaintiff.

*Herman Berg*, for defendant.

BIDDLE, P. J., March 31, 1924.—The defendant, Park Myers, was indicted and convicted for the violation of the Enforcement Act, through the illegal sale and possession of intoxicating liquors; and he has moved for a new trial, and advanced in support of his motion the following reasons:

1. The verdict was against the law.

2. The verdict was against the evidence.

3. The verdict was against the weight of the evidence.

4. The learned trial judge erred in refusing to admit the testimony of Doctor Phillipy on the mental condition of Arthur Sheriff, who was the chief witness of the Commonwealth, and upon whose testimony the conviction was founded; the said Arthur Sheriff being *non compos mentis.*

The first three reasons were not insisted upon, and none of them could be sustained. The evidence produced by the Commonwealth was ample, both in quantity and quality, to sustain a conviction if it was believed by the jury, as the verdict shows was the case. The fourth reason, however, was pressed with great vigor and ability by the learned counsel for the defendant.

Arthur Sheriff, the witness referred to, was called by the Commonwealth, and testified to the illegal possession and sale of intoxicating liquor by the defendant. He was examined at some length by the acting district attorney and told a coherent, consistent and plausible story of the alleged occurrences, his story being corroborated in some details by other witnesses and by circumstances not in dispute; it was flatly contradicted as to the controlling features by the defendant alone. Following the examination, he was cross-examined thoroughly by counsel for the defendant, one of the most experienced and able cross-examiners at this bar; but his story was not shaken in any manner by the cross-examination, nor did he become confused or involved therein, and throughout he showed a ready and accurate understanding of the questions asked him. Without attempting to pass on his general mental condition, his examination and cross-examination would, in the opinion of the court, compare favorably with that of the majority of the witnesses who appear in the

criminal court. No objection to his competency was made by the defence when he was offered, and on the argument of the present motion, counsel for the defendant admitted that he believed Sheriff was a competent witness.

After the close of the Commonwealth's case, and after the defendant had opened his case to the jury, the defendant called Dr. W. T. Phillipy, and proposed to show by him that some two years prior the witness, who is an experienced physician of the county, had made an examination of Arthur Sheriff to determine his mental condition, and that the examination disclosed, in the opinion of the witness, that Sheriff was at that time of an impaired mental condition and below normal intelligence. The Commonwealth objected that the examination mentioned in the offer was too remote, and when this objection was sustained, the defence offered to prove by the witness that the condition shown by the former examination was one that would not improve with the lapse of time; stating that the purpose of the proposed testimony was to impeach the truthfulness of Arthur Sheriff, the Commonwealth's witness. To this additional offer the Commonwealth objected that the truthfulness of the witness could not be attacked in this manner, and this objection was sustained by the court. It is this latter ruling of which the defendant now complains and upon which he bases the whole of his argument for a new trial.

No brief was submitted by either side; the learned counsel for the defendant stating that he had made a careful examination of the Pennsylvania decisions without finding anything on the subject, and the counsel for the Commonwealth not pretending to have made any examination whatever. The court, therefore, received no assistance on the point from either side.

We have given the question raised careful consideration, in view of its importance; but we are not convinced that our ruling was erroneous, nor that it was prejudicial to the defendant. While we have found no case where the exact question has been passed upon by the appellate courts of this State, an analogous question was considered and passed upon by Judge Penrose of the Philadelphia Orphans' Court in Draper's Estate, 26 W. N. C. 218, where the court cited and approved the decision in Kendall v. May, 10 Allen (Mass.), 59, holding that the competency of a witness alleged to be of unsound mind or of impaired intellect was to be determined by inspection.

In Kendall v. May, the case cited by the learned Orphans' Court of Philadelphia, experts were offered to show that a party was insane at the time of trial as well as prior thereto, and this offer was rejected, the court saying: "The rule as they state it is, that it is for the judge to satisfy himself whether the witness understands the nature of the oath and is capable of testifying. He then decides upon the competency of the witness, and if he admits him, it is left to the jury to estimate the value of his testimony."

Outside of Pennsylvania there appears to have been some difference of opinion among the appellate courts as to the extent to which evidence to show the mental capacity of a witness might be admitted; the courts of some states rejecting it altogether, the courts of others admitting it to some extent and for limited purposes. Thus, it has been ruled that evidence would be admitted to show that a witness was subject to delusions and hallucinations, or that a witness had been or was declared insane, or that, through disease or bad habits, the memory or powers of observation of a witness had been impaired. But we have been unable to find any case in which it was held that evidence of mental impairment, without more, would be received as a valid attack on the veracity of a witness.

In the case at bar there was no offer to show that Sheriff was or ever had been insane, that he was or ever had been subject to delusions and hallucin-

Commonwealth v. Myers.

ations, or that his memory was in any manner affected by the alleged impairment of his mental condition; and such impairment of memory is not a necessary accompaniment of an impaired mental condition. Even without more, the failure to offer to show that the memory of the witness was impaired or that his mental impairment would predispose him to untruthfulness would, in our opinion, render the proposed evidence incompetent. That is the conclusion reached in some of the states where evidence of mental incapacity has been received to affect the credibility of a witness.

"It is proper to say that the rule we recognize extends no further than to permit the impeachment of a witness by showing an abnormal condition of the mind caused by disease or habits *which impair the memory:*" Alleman v. Stepp, 3 N. W. Repr. 636.

On the other hand, the appellate courts of a number of other states have ruled flatly that such evidence as was offered here is not competent at all. Thus, it was said:

"If a witness possess a weak intellect, he still may testify; for although the law, by an arbitrary rule, has fixed upon the age that a person may legally be a witness, still the subtleties of the human mind, aided by all the new discoveries and modern improvements in science and metaphysics, have been unable to fix upon the exact quantity of intellect that is necessary to constitute a man of understanding. All the inquiries, therefore, upon that point, proper to be made of the witness, should be upon the cross-examination, and the facts elicited become evidence to the jury and not to the court. . . . In this case the witness was cross-examined for the purpose of testing her capacity and understanding as affecting her credit with the jury, and this was the only purpose for which the examination was proper:" Robinson v. Dana, 16 Vt. 474, 477.

Evidence that a witness's mind had been weakened by disease, with a view to impeach his testimony, is not admissible: Phillips and Waples v. Short, 2 Harrington (Del.), 339.

"As a general proposition, the trustworthiness of a witness is not to be graduated according to his intelligence:" Chicago, etc., Ry. Co. v. Bert, 69 Ill. 388.

If the court decides that a witness is sane, the evidence given to the court upon the subject of insanity cannot be submitted to the jury to affect his credibility: Campbell v. State, 23 Ala. 44.

"Moreover, if it be conceded that the credibility of a witness is to be graded in proportion to his strength of intellect, the tribunal before which he testifies can better estimate his capacity, and the weight to which his testimony is entitled, by his manner, and by his statements on cross-examination, than can ordinarily be done by the testimony and conflicting opinions of other witnesses, as to the extent of his mental powers or the degree of his intelligence.

"But neither the veracity nor credit of a witness is necessarily impeached by proving that he is possessed of a weak intellect, . . . he may still be credible; and the degree of credit to which he is entitled in the testimony given cannot be practically better ascertained than by the usual tests, without resort to other proof of his capacity:" Bell v. Rinner, 16 Ohio St. Rep. 45, 47; Goodwyn v. Goodwyn, 20 Ga. 600.

As we regard it, these later citations are in harmony with the well-established rule in this State that "character for care, skill and *truth of witnesses*, parties or others, must all alike be proved by evidence of general reputation, and not of special acts:" Frazier v. Pennsylvania R. R. Co., 38 Pa. 104;

Snodgrass v. Carnegie Steel Co., 173 Pa. 228; Stasch v. Ore Bank Co., 19 Pa. Superior Ct. 113.

We are of the opinion that the proposed testimony was much more closely analogous to that of a special act than it was to that of general reputation; and, apart from the well-considered rulings of the appellate courts of other states, we think that the rulings of our own courts required the rejection of the evidence. It follows, therefore, that the motion for a new trial must be overruled.

And now, March 31, 1924, the motion for a new trial is overruled and the district attorney is directed to move for judgment of sentence.

From Francis B. Sellers, Carlisle, Pa.